## Brooks v. Upper Frederick Township

*Malvin L. Skaroff,* for appellant.

*Willard C. Hetzel,* contra.

Denworth, Member; June 16, 1975.—This case arises on appeals from two separate applications for a privy that appellant proposed to install to service a vacation house on property in Bucks County, Pa. The applications were denied by the local approving body, appellee here, Upper Frederick Township Board of Supervisors.

### FINDINGS OF FACT

1. Appellant is Robert B. Brooks, Jr., who resides at 870 East Chelten Avenue, Philadelphia, Pa.

2. Appellees are the Upper Frederick Township Board of Supervisors, Montgomery County, Pa., and the Pennsylvania Department of Environmental Resources (hereinafter department).

3. Appellant is in the process of building a simple recreational home on a portion of his parents' property on Hauck Road in Upper Frederick Township, Bucks

County, Pa., which he presently intends to use on a part-time basis.

4. In January of 1974, prior to building his home, appellant had a deep hole test performed to determine whether the soil was suitable for an on-lot sewerage disposal system. At that time it was informally determined by the township enforcement officer that the soil was not suitable due to mottling[1] at 37 inches.

5. Appellant then applied for a permit to install a concrete privy, which appellant claimed was authorized under section 73.81 of the Rules and Regulations of the department. This application was denied by the township enforcement officer, George E. Gallie, and, on appeal, his denial was affirmed by the Township Board of Supervisors.

6. In July of 1974, appellant submitted another application for a privy at a different location on the property. That application was again denied by Mr.

---

[1] "Mottling is, in simplest terms, a variation in the coloring of soils. When that variation shows a concentration of redder colors in some spots, and grayer colors in others—a variation in "chroma," in particular—it will almost invariably be due to segregation of iron compounds from other components in the soil, and especially segregation of reduced (ferrous) iron compounds from oxidized (ferric) iron compounds. Iron compounds in the soil in the presence of air for any extended period of time will oxidize to the ferric state; ferric compounds are generally red. If the water table rises to a given level for prolonged periods of time, say eighteen inches, . . . then the relative absence of oxygen produces reducing conditions, and the ferric compounds are changed to ferrous compounds. Ferrous compounds are generally grayer—of a lower chroma. The ferrous compounds tend to migrate, and collect in nodules; when the water table drops, many of these nodules will be exposed to air and oxidize to ferric iron. Nodules that for some reason the air did not reach, and areas of the soil from which much of the iron had earlier migrated, will appear gray": Fabiano v. Commonwealth, EHB docket no. 73-051-B (issued August 1, 1973).

Gallie on July 11, 1974, and, on appeal, his decision was again affirmed by the Township Board of Supervisors by an order dated August 2, 1974.

7. In connection with appellant's first application, the department by letter dated April 25, 1974, advised Mr. Gallie that the application must be denied because the proposed system failed to meet certain enumerated requirements of chapters 71 and 73 of the department's regulations.

8. After the department published new regulations in September 1974, appellant was advised to apply for a permit to construct a built-up sand filter system. He made application for such a system and his application was approved. The sand filter system was three-quarters completed at the time of the hearing in this matter.

9. Although appellant plans to use the sand filter disposal system during the summertime, he did not wish to withdraw his appeal on his application for a privy because he wants to make part-time use of the house in the winter and he wishes to avoid the expense and possible nuisance of having the water turned on during the winter.

10. There is no official municipal sewerage facilities plan in effect in Upper Frederick Township providing for privies at any location.

11. There is no municipal ordinance providing for the cleaning out of holding tanks in Upper Frederick Township. Appellant intended to arrange to have his privy cleaned out annually by contract with a private contractor who said he should be available for that purpose.

12. The township enforcement officer who has been approving on-site sewage disposal systems since 1966 has never issued a permit for a privy in Upper Frederick Township.

## DISCUSSION

The question here is whether the township should or could have issued a permit for a privy under the applicable regulations of the department. The regulations do include provisions dealing with the construction and location of privies. Because appellant's argument is based on differentiating between privies and holding tanks, we quote the regulations dealing with holding tanks in full:

### "HOLDING TANKS, PRIVIES AND CHEMICAL TOILETS

"§73.81 General.

"Holding tanks, privies, chemical toilets and related on-lot sewage disposal systems are individual sewage systems and require permits. Because such systems do not provide for final on-lot treatment and disposal of the sewage and require regular service and maintenance to prevent their malfunction and overflow, they shall only be used where a septic tank and tile field or aerobic sewage treatment system cannot be used and where the sewage facilities plan provides for their use.

"§73.82 Holding tanks.

"(a) *Capacity.* A holding tank shall be large enough to hold a minimum of three days sewage waste or 1,000 gallons whichever is larger.

"(b) *Construction.* A holding tank shall be constructed of durable material and shall be watertight.

"(c) *Warning device.* The collection unit shall be equipped with a warning device to indicate when the unit is within 75% of capacity. Such warning device shall create an audible or visible signal at a location frequented by the homeowner or responsible individual.

"(d) *Maintenance.* Disposal of waste from a collec-

tion unit must be to a site approved by the Department.

"§73.83   Privies.

"(a) *General.* Where water under pressure is not available, a privy is the simplest means of excreta disposal.

"(b) *Location.* The location shall be such as to minimize danger of contamination to water supplies. Under ordinary conditions the privy shall be at least fifty (50) feet and downgrade from any sources of water supply. The site shall be accessible to the user, about fifty (50) feet from any building served, and consideration shall be given to the direction of prevailing winds to reduce odor nuisances.

"(c) *Construction.* The privy shall be constructed of substantial materials using a concrete vault large enough to provide several years storage and be provided with a cleanout in order to assure easy access.

"(1) The pit shall be provided with a screened vent and the seat covers and door shall be made self-closing to prevent the entrance of flies. The privy superstructure shall also be fly-tight, well-ventilated and fastened solidly to the floor.

"(2) An earth mound shall be placed around the privy or a surface water diversion ditch shall be used to prevent flooding of the vault.

"(3) The seat and cover shall be smooth and easily cleanable.

"(4) The door shall be provided with weather stripping for purposes of insect proofing."

These regulations, which were in force at the times of appellant's applications, were replaced in September 1974, with slightly altered provisions. In the 1974 version, the last sentence of section 73.81 states:

". . . Because such systems do not provide for final on-lot treatment and disposal of the sewage and re-

quire regular service and maintenance to prevent their malfunction and overflow, they shall only be used where the Department finds and gives written notice to the approving body that the requirements of §71.51 and 71.52 of Chapter 71 of this Title have been met."

Also subsection (a) of section 73.83, stating that "where water under pressure is not available, a privy is the simplest means of excreta disposal," was eliminated. However, in the definition sections of both sets of regulations, privy is defined under the heading "holding tank" as "a holding tank designed to receive sewage where water pressure is not available." Compare: 25 Pa. Code §73.1(a)(iii), adopted August 2, 1971, and revised April 20, 1972, with 25 Pa. Code §73.1(14)(iii), effective September 16, 1974; and compare 25 Pa. Code §71.1(9)(iii), adopted August 2, 1971, and revised September 20, 1973, with 25 Pa. Code §71.1(14)(iii), effective September 16, 1974. In the chapter of the regulations dealing with the administration of sewage facilities programs, regulation §71.61 (which was replaced by a similar provision, §71.51, in the new regulations) provided:

"HOLDING TANKS

"§71.61 Restrictions on use.

"(a) Holding tanks require regular service and maintenance to prevent their malfunction and overflow and shall be used only in lieu of treatment tanks and subsurface absorption areas when all the following specific conditions are met:

"(1) The applicable official plan or the revisions thereto indicate the use of holding tanks for that lot and provides for replacement by adequate sewerage services in accordance with a schedule approved by the Department.

"(2) The municipality, sewer authority, or other Department approved entity with jurisdiction or responsibility over the site has by suitable ordinance, regulation or restriction assumed responsibility for maintaining existing and new holding tanks and has received Department approval for its proposed disposal site.

"(3) The holding tank meets the design standards set forth in Chapter 73 of this Title (relating to standards for sewage disposal systems).

"(b) Holding tanks may be permitted by the Department notwithstanding the restrictions set forth in subsection (a) of this section when such use is necessary to abate a nuisance or public health hazard."

We conclude from the evidence that appellant would construct a privy in compliance with the construction and location requirements of section 73.83. However, as the department's letter to Mr. Gallie indicates, it is the pre-conditions for the allowance of a privy that appellant cannot satisfy. First, it is clear that water pressure is available at appellant's site. The fact that appellant does not wish to use it does not make it "not available." Second, there is no sewerage facilities plan provision that would allow a holding tank on the site in question as a temporary measure. Third, there is no municipal "ordinance, regulation or restriction" providing for the maintenance of holding tanks in Upper Frederick Township. Fourth, while, initially, it might have been said that no alternative system was available (although the department thought that even under the old regulations that possibility was not exhausted), it is now a fact that appellant has an alternate permitted on-lot sewage disposal system.

Appellant argues that a privy is different from a holding tank in that it does not receive waste water

and, therefore, does not require the kind of authorization or servicing necessary for holding tanks. He argues that the regulations recognize this distinction and that the requirements of section 71.61 were only intended to apply to retention type holding tanks, not privies. Appellant believes that even if this distinction wasn't recognized under the old regulations, it is under the new. We think this is wishful thinking on the part of appellant. Under all of the regulations new and old, a privy is defined as a type of holding tank "designed to receive sewage where water pressure is not available." And it is clear under both old section 73.83 and new section 73.83, the "general" provision governing holding tanks and privies, that both are to be permitted only pursuant to a sewerage facilties plan.

We must admit that a study of the regulations dealing with privies presents something of the aspect of Catch-22, since it does not appear that a privy would ever be permitted unless it was provided for under an approved sewage facilities plan and that, in itself, seems unlikely. Although there might be some question about the constitutionality of these requirements if no water pressure were available and no municipal plan and ordinance were in effect (see Commonwealth of Pennsylvania, Department of Environmental Resources v. Trautner, 1225 C. D. 1974, issued May 19, 1975), there can be no question about the reasonableness of the regulations as applied to appellant when appellant has, in fact, been able to get an approved on-site sewage disposal system for his property. Insofar as appellant means to challenge the modern philosophy that precludes privies where other systems are available, he should perhaps address himself to a forum for environmental opinion. The intent of the department's regulations appears to be to limit the use of privies to the most primitive circumstances or where they may be

necessary to abate a nuisance, and we cannot say that these regulations are unreasonable.

## CONCLUSIONS OF LAW

1. The board has jurisdiction over the parties and the subject matter of this appeal.

2. A privy is a type of holding tank under the regulations of the Department of Environmental Resources that were in effect at the times of appellant's applications and under the revised regulations that have been adopted since then.

3. Since water pressure is available at appellant's property and there is no official municipal sewerage facilities plan that would allow a privy on appellant's property, appellant's applications for a privy were properly denied.

## ORDER

And now, June 16, 1975, the action of the Upper Frederick Township Board of Supervisors in denying appellant's applications for a privy is sustained and the appeal of Robert B. Brooks, Jr., is dismissed.